UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| MORRIS PATRICK, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CAUSE NO. 3:17-CV-00377-MGG |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff Morris Patrick seeks judicial review of the Social Security Acting Commissioner's decision denying him disability benefits, and asks this Court to remand the case. This Court may enter a ruling on this matter based upon the parties' consent. 28 U.S.C. § 636(c); 42 U.S.C. § 405(g); [DE 17]. For the reasons below, the Court reverses and remands the decision of the Acting Commissioner of the Social Security Administration for further proceedings consistent with this opinion.

**I.  OVERVIEW OF THE CASE**

Patrick claims an onset of disability effective May 30, 2014, which was caused by chronic back pain, post-surgical problem with his right lower leg and foot, and obesity [DE 9 at 30–31]. At the time of his alleged onset of disability, Patrick was a 50 year man with a history of factory employment. Patrick had most recently worked for Dalton Foundries as a scrap auditor and utility worker [DE 9 at 55]. He reported completing the 8th Grade but did not attend secondary school and does not have a GED [*Id.* at 73–

74]. Since June 2014, the Patrick has not engaged in any substantial employment, and has only received sick pay and disability benefits from Dalton Foundries instead of wages [*Id.* at 30].

Plaintiff's application for disability insurance benefits ("DIB") of July 7, 2014, and his application for Supplemental Security Income ("SSI") of January 15, 2016, were denied initially and again upon reconsideration. Following a hearing on October 31, 2016, the Administrative Law Judge ("ALJ") issued a decision affirming the Agency's denial of benefits. The ALJ found that Patrick was unable to perform any past relevant work [*Id.* at 36]. However, the ALJ found that Patrick has the residual functional capacity ("RFC") to perform light work as defined by the regulations[1] [*Id.* at 33], and that Patrick has the ability to meet the requirements for employment as a housekeeper/cleaner, cashier II, and packager as those jobs are defined by the Dictionary of Occupational Titles [*Id.* at 37]. Based on these findings, the ALJ denied Patrick's claims.

Other facts will be included as necessary.

## II. DISABILITY STANDARD

The Commissioner follows a five-step inquiry in evaluating claims for disability benefits under the Social Security Act:

---

[1] Regulations governing applications for DIB and SSI are nearly identical and found at 20 C.F.R. § 404 and 20 C.F.R. § 416, respectively. For the sake of clarity and efficiency, this order will refer only to 20 C.F.R. § 404.

2

> (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy.

*Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (citing 20 C.F.R. § 404.1520(a)(4)).

The claimant bears the burden of proof at every step except step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

### III. STANDARD OF REVIEW

This Court has authority to review the Commissioner's decision under 42 U.S.C. § 405(g). However, the Court must give deference to the ALJ's decision so long as it is supported by substantial evidence and the ALJ has built an "accurate and logical bridge" from evidence to conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (*citing Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). This deference is lessened where the ALJ's findings contain an error of fact or logic, or fail to apply the correct legal standard. *Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013). An ALJ decision cannot be affirmed if it lacks evidentiary support or an adequate discussion of the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). At a minimum, an ALJ must articulate her analysis of the record to allow the reviewing court to trace the path of her reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 298 F3d 589, 595 (7th Cir. 2005). While the ALJ need not specifically address every piece of evidence in the record to present the requisite "logical bridge" from the evidence to her conclusions, *O'Connor-Spinner v. Astrue*, 627

3

F.3d 614, 618 (7th Cir. 2010), the ALJ must a least provide a glimpse into the reasoning behind her analysis and the decision to deny benefits. *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001).

A court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). Thus, the question upon judicial review is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). Substantial evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, substantial evidence is simply "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001).

IV. **ANALYSIS**

Following the hearing, the ALJ issued a written decision based on the five-step disability evaluation prescribed by the Social Security Administration's regulations. 20 C.F.R. § 404.1520. At step one, the ALJ found Patrick had not engaged in substantial gainful activity since May 30, 2014, the alleged onset date [DE 9 at 30]. At step two, the ALJ noted that Patrick had the following severe impairments: (1) post lumbar fusion surgeries in December 1998 and July 2014, which show residual degenerative and

4

discogenic changes; (2) post laminectomy syndrome; (3) post right foot surgery, including great toe fusion and right gastrocenemius recession; and (4) obesity [*Id.* at 30–31]. Patrick also had non-severe impairments: (1) hypertension; (2) hyperlipidemia, (3) hypothyroidism; (4) chest pains; (5) asthma/bronchitis; (6) allergies; (7) benign positional vertigo; (8) low testosterone; (9) left ankle problems; (10) left elbow problems; (11) a left hand injury; (12) depression; and (13) anxiety [*Id.* at 31]. At step three, the ALJ found that Patrick did not meet the criteria of a Section 1.04 listing regarding disorders of the spine [*Id.* at 32]. 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.04.

Before proceeding to step four, the ALJ analyzed Patrick's RFC and concluded that Patrick retained the ability to perform some light work with restrictions. The ALJ stated the following about Patrick's RFC:

> Perform light work…except that he can never climb ladders, ropes or scaffold, he can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, crawl, and he can occasionally reach overhead with the bilateral upper extremities. He must also avoid all exposure to vibratory tools and wet or uneven surfaces.

[*Id.* at 33]. At step four, the ALJ found that these limitations prevented Patrick from performing any of his past relevant work [*Id.* at 36]. At step five, however, the ALJ found that, based on Patrick's age, education, work experience, and RFC, Patrick was able to perform a significant number of jobs in the national economy, including housekeeper/ cleaner, cashier II, and packager [*Id.* at 37]. Based on these findings, the ALJ concluded that Patrick had not been under a disability as defined by the Social Security Administration.

Plaintiff argues that the ALJ improperly found that the ALJ's decision was not

supported by substantial evidence with respect to the following: (1) the finding that the Plaintiff did not meet Listing 1.04; (2) the credibility determination by the ALJ; and (3) the ALJ failed to properly develop a record. The Court will consider each issue raised.

A. **ALJ'S Finding that Patrick's Impairment not meet a Section 1.04 Listing Not Supported by Substantial Evidence**

Where a claimant has an impairment that meets the duration requirement[2] and is listed in Appendix 1 to Subpart P of Part 404, a finding that the claimant is disabled is required irrespective of age, education, or work experience. 20 C.F.R. § 404.1520(d). "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (quoting *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004).

Here, Patrick claimed that he was disabled due to impairments in his spine that were delineated in Listing 1.04.[3] The record is replete with medical evidence

---

[2] *See* 20 C.F.R. § 404.1505(a) (defining disability "as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.")
[3] Listing 1.04 requires:

disorders of the spine (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disk disease, facet arthritis, vertebral fracture) resulting in compromise of a nerve root or the spinal cord with:

- A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test; OR
- B. Spinal arachnoiditis, confirmed by operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; OR

concerning Patrick's diagnoses of lumbar degenerative disc diseases, lumbar stenosis, central canal stenosis, lumbar radiculitis, and chronic lumbar pain [DE 9 at 292–659]. However, the ALJ found,

> [t]here is no evidence in the record that the claimant has…disorders of the spine with inability to ambulate effectively (although he reportedly has a cane, walker, and crutches, he does not use them on a regular or consistent basis); that he has had spinal arachnoiditis, or that he has significant loss of muscle strength or muscle atrophy in his extremities (his muscles strength was, instead, generally noted to be normal.

[*Id.* at 33]. This sentence merely lists some of the requirements of 1.04 listing and does not contain a complete analysis of the requirements.

This is the type of "perfunctory analysis" that the Seventh Circuit has repeatedly found inadequate. *See, e.g.*, *Minnick*, 775 F3d at 935; *Kastner*, 697 F.3d at 647; *Barnett*, 381 F.3d at 668. Accordingly, the Court agrees with Patrick that the ALJ's decision was inadequate and should be remanded for further proceedings in order for the ALJ to properly assess Patrick's impairments and to determine if these impairments meet or equal a Section 1.04 listing. Further, assuming the ALJ finds that Patrick has an impairment that meets or equals of Section 1.04 listing, then the ALJ should also determine if the impairment is of the type and duration that establishes a disability irrespective of age, education, and work experience as delineated by 20 C.F.R.

---

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting inability to ambulate effectively, as defined in 1.00 B2b.

20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.04.

§ 404.1520(d).

B.      ALJ'S Credibility Determination Unsupported by Substantial Evidence

In her analysis of the severity of Patrick's impairments, the ALJ discounted Patrick's testimony regarding his symptoms. Specifically, the ALJ focused on Patrick's ability to perform some household tasks to show that he is capable of more than he claims. However, Patrick contends that the ALJ failed to demonstrate consideration for the full range of his testimony about his inability to perform activities of daily living and selectively culled the record to support her conclusion that Patrick had residual functionality to perform low-level, unskilled labor.

1.      The ALJ's Evaluation of Patrick's Functionality Was Incomplete

The ALJ properly stated that she needed to engage is a two-step analysis: (1) determine if the claimant had a medically determinable physical or mental impairment that could be reasonably expected to produce pain or other symptoms; and (2) evaluate the intensity, persistence, and limiting effects of the pain or other symptoms to determine the extent they limit the claimant's functionality. SSR 96-7p.[4] At the first step, the ALJ found medically verifiable symptoms that impaired Patrick's ability to work – "the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause most of the alleged symptoms" [DE 9 at 34]. The ALJ went on to describe the number of surgeries and other medical procedures that

---

[4] SSR 96-7p was rescinded and superseded by SSR 16-3p, which became effective on March 27, 2017. The ALJ's decision here was issued before SSR 16-3p's applicable date. Therefore, the Court will review the ALJ's decision in light of SSR 96-7p.

Patrick endured, his loss of functionality, and the number of medications that he has been prescribed to provide pain reduction and/or management. The ALJ specifically noted Patrick's testimony that

> he has back pain at level "4" even on a good day, that he has 20-25 bad days per month where he cannot do much of anything, that he sometimes cannot get dressed by himself . . . that his leg cramps a lot, and that he is able to stand for just 15-20 minutes at a time . . . .

[*Id.*].

However, in her RFC analysis, the ALJ discounted Patrick's testimony about the effect of his impairments in part based on his testimony that

> he was able to engage in a fairly full range of other activities, including caring for his personal needs (*with some assistance*), doing *some* cooking and housework (*with breaks*), shopping for groceries, feeding his pets, driving, going out alone, going to church, visiting family and church members, reading the Bible, and using Facebook.

[*Id.* at 35] (emphasis added) In his appeal, Patrick argues that the ALJ misconstrued Patrick's testimony and failed to apply Seventh Circuit legal standards related to evaluation of a claimant's testimony.

In fact, the Seventh Circuit has held that the ability to perform basic household chores, particularly when done with breaks, cannot be counted against an applicant. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000), *as amended* (Dec. 13, 2000) ("minimal daily activities . . . do not establish that a person is capable of engaging in substantial physical activity"). "[A] person's ability to perform daily activities, especially if they can be done only with significant limitations, does not necessarily translate into an ability to work full-time." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013).

9

Patrick is a case in point. Merely being able to care for his personal needs with assistance and engage in some cooking and housework with breaks do not support a finding that Patrick has an ability to work. Moreover, without engaging in improper speculation, the record relied upon by the ALJ does not refute Patrick's testimony concerning his physical problems and his inability to perform basic functions 20-25 days per month.

In her brief, the Acting Commissioner argues that the ALJ reasonably evaluated Patrick's symptoms and limitations as compared to objective medical evidence. As such, the Acting Commissioner contends that the ALJ's decision discounting Patrick's credibility was supported with substantial evidence and cannot be considered patently wrong. "An ALJ is in the best position to determine a witness's truthfulness and forthrightness." *Skarbek v. Barnhart,* 390 F.3d 500, 505 (7th Cir. 2004). Accordingly, "[s]o long as an ALJ gives specific reasons supported by the record, [the court] will not overturn [an ALJ's] credibility determination unless it is patently wrong." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015).

Despite his arguments to the contrary, Patrick has not demonstrated that the ALJ's credibility determination was patently wrong. Patrick has, however, brought into question whether the ALJ ignored evidence when deciding how to assess his ability to perform activities of daily living. Such "cherry-picking," or failing to mention directly relevant or even contradictory evidence, by the ALJ is not proper. *See Scott v. Astrue,* 647 F.3d 734, 740 (7th Cir. 2011); *see also Huber v. Astrue*, 395 F. App'x 299, 302 (7th Cir. 2010) (citing *Garfield v. Schweiker*, 732 F.2d 605, 609 (7th Cir. 1984)). As such, the ALJ's

apparent plucking of isolated statements from Patrick's testimony to discredit his testimony about his subjective symptoms, without accounting for the context and qualifications of the statements, fails to create a logical bridge to the ALJ's conclusions about Patrick's symptoms.

  **2. The ALJ's Reliance on Patrick's Application for Unemployment was Improper**

In her decision, the ALJ noted that "the record reflects that the claimant has a strong work history" [DE 9 at 35]. However, the ALJ then proceeded to undermine the credibility of Patrick with reference to other parts of the record. For instance, the ALJ stated: "the record reflects that the claimant received unemployment compensation payments in 2015" [*Id.*]. The receipt of unemployment benefits does not and should not preclude the receipt of DIB or SSI. As noted by the Seventh Circuit, an ALJ may err when questioning the reliability of a claimant because he or she is receiving unemployment compensation. *Richards v. Astrue*, 370 F. App'x 727, 732 (7th Cir. 2010) ("A desperate person might force herself to work—or in this case, certify that she is able to work—but that does not necessarily mean she is not disabled").

Here, Patrick testified that he could not work and his only source of income was disability sick pay [*Id.* at 62]. Patrick also noted that he probably was not even qualified to received unemployment compensation but, based on his good work history, the employer was willing to say that they had laid him off so that he could draw unemployment [*Id.*]. In essence, Patrick's testimony shows that he had a long history of working at foundries but found that he was unable to meet the job requirements and

11

sought assistance from the most likely sources—unemployment compensation and disability benefits. This should not be surprising, nor should it somehow undermine the credibility of the claimant – "desperate times call for desperate measures". HIPPOCRATES, APHORISMS (400 BCE); *see also Richards*, 370 F. App'x at 732.

### 3. The ALJ's Disregard of Medical Opinions

As part of her credibility analysis, the ALJ also improperly discounted the opinions of the treating physicians, Doctors Williams and Barr, which contrary to the Acting Commissioner's arguments, were not analyzed in depth. In her decision, the ALJ noted that both Doctor Williams and Doctor Barr opined in 2015 that Patrick was only occasionally able to walk [DE 9 at 36]. Notably, the ALJ cited only Williams' and Barr's treatment records because they never completed medical source statements opining about the effect of Patrick's impairments on his ability to work. Yet after citing these medical records, the ALJ proceeded to disregard this expert medical evidence because of Patrick's "lack of muscle atrophy and significant muscle strength deficits in his lower extremities" and "lack of regular and consistent use of an assistive device for ambulation or balance" [*Id.*].

Moreover, the ALJ relied upon the observation of a physical therapist who stated that "the claimant provided sub-maximal effort and that he displayed an 'exaggerated' pain level during his functional capacity evaluation" to suggest that Patrick's alleged symptoms were not consistent with the record despite Williams' and Barr's opinions to the contrary. [*Id.*]. The ALJ then failed to explain why she relied more heavily upon the opinions of a physical therapist who performed a single functional evaluation rather

than on the opinions of Doctors Williams and Barr, which were based on their examinations and treatment of Patrick.

Under Social Security regulations, ALJs should give more weight to the medical opinion of a source who examines a claimant than to the medical opinion of a source who has not examined the claimant. 20 C.F.R. § 404.1527(c)(1). Yet, here, the ALJ dismissed the bulk of Dr. Barr's opinion and all of Dr. Williams' opinion in favor of the opinion of a physical therapist and the ALJ's own non-expert interpretation of the medical records.

Treating physician opinions are generally preferred to those of non-treating sources because treating physicians are likely able to provide a longitudinal picture of a claimant's impairments. 20 C.F.R. § 404.1527(c)(2). As such, treating source opinions can only be rejected for good cause and if a treating source's opinion is not given controlling weight, the ALJ must articulate a rationale for the weight given. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)).

Of course, inconsistencies within the objective medical evidence in the record may be an acceptable rationale for discounting a medical opinion. *Skarbek,* 390 F.3d at 503. Here, the medical evidence was consistent with Patrick's alleged symptoms but the opinions of his treating physicians were discounted based on the one-time observation of physical therapist and the lay opinion of the ALJ. In any case, the ALJ did not clearly articulate her rationale for prioritizing these non-expert opinions over those of Dr. Williams and Dr. Barr. Without such an explanation, the ALJ has not supported her conclusion that Patrick's symptoms are inconsistent with the evidence in

the record, particularly the typically preferable opinions of treating source physicians like Drs. Williams and Barr. Thus, the ALJ's credibility analysis is not supported by substantial evidence such that remand is warranted for complete consideration of Patrick's subjective symptoms and their effect on his ability to work.

### C. The ALJ's Development of the Record

Patrick's contention that the ALJ's failure to properly develop the record resulted in an RFC determination not supported by substantial evidence is essentially redundant because it relies upon the underlying arguments addressed above. As remand is necessary for the reasons addressed above, the Court need not discuss Patrick's argument about the ALJ's development of the record. Upon remand, it is presumed that the ALJ will provide a thorough analysis of Patrick's RFC determination, including a credibility determination that takes into account the issues raised above.

### V. CONCLUSION

For the above reasons, this Court concludes that the ALJ's decision was not supported with substantial evidence. Therefore, the Court now **REMANDS** this case for further proceedings consistent with this opinion. The Clerk is **DIRECTED** to terminate this case in favor of Patrick.

**SO ORDERED**

Dated this 27th day of July 2018.

                                                  s/Michael G. Gotsch, Sr.
                                                  Michael G. Gotsch, Sr.
                                                  United States Magistrate Judge